F.P. Davis, S.A.            E. I. S. J. E. S. S. S. S. S. S. S. S. S. S. S. S. S. S. S. Good morning, Mr Francisco. Chief Judge Pryor and may it please the court, Noel Francisco for Grupo Unidos. International arbitration is subject to limited judicial review precisely because it's based on the party's consent. But that's also why one of the few bases for overturning an arbitral award is when an arbitrator knows of but fails to disclose information which would lead a reasonable person to believe that a potential conflict exists. That failure to disclose undermines the very basis of consent arbitration, consent-based arbitration. And here the arbitrators plainly withheld information that could reasonably give rise to a potential conflict, including that two of Panama's attorneys served alongside of two of the arbitrators in this case, both before and during these arbitral proceedings, and that Panama's four-time wing arbitrator awarded the or helped award the arbitral president a lucrative contract. Is it your argument that there was actual prejudice of the arbitrators here or merely that the non-disclosure itself was improper? Your Honor, it's not quite either of those. It's certainly not actual prejudice. That is not the standard for evident partiality. It's whether a reasonable person could believe that a potential conflict exists. And the rule in this court is where you meet that standard, a reasonable person could find a potential conflict. Their failure to disclose gives rise to evident partiality. And here, you know, the conflict is really not that much different than if my friend, Mr. Mullins, served alongside of one of you on a different panel of this court last week. I mean, isn't the real issue, though, the non-disclosure? Your Honor, if there had been disclosure. Had there been disclosure? On the front end, then you wouldn't have this argument, right? And the parties had said, let's go forward. I think that's right, Your Honor. Had they fully disclosed it. The problem, it seems to me, though, is that if it was if your argument was actual partiality, actual prejudice, then there could be a vacant. It doesn't seem like there would be in the circumstance where it's just the non-disclosure. Well, Your Honor, I'm certainly not arguing that there was actual prejudice here because that's not the standard. At the same time, I'm not saying that there was not actual prejudice. I don't think we've had an opportunity to develop that. What I am saying is that when they fail to disclose these types of potential conflicts, that's what gives rise to vacature. As the Supreme Court said, you have to disclose, quote, any dealings that might create an impression of possible bias. And I think that this court's decision in University Commons is pretty close to directly on point. And this is what you said, serving as the decision maker in one action, in which a colleague in another action represents a party, clearly poses the possibility of bias and thus represents a potential conflict that a reasonable person would easily recognize. Again, it's no different than if Mr. Mullins were serving last week on a panel of this court. He knew about it. His client knew about it. You knew about it. But I didn't know about it. That is plainly something that needs to be disclosed because it creates a special relationship between him and you, and it gives him insights into your thinking that I don't have. Same with the fact that their four-time wing arbitrator awarded the arbitral president a lucrative contract right smack in the middle of the case. As this court made clear in the Church of Scientology decision, a wing arbitrator is only one step removed from the party itself. So again, it would be no different than if Mr. Mullins here awarded one of you a lucrative contract right smack in the middle of this case. Those are plainly the types of things that need to be disclosed, and the failure to disclose them is what gives rise to evident partiality here. I mean, here, this case is largely unprecedented. We've got a set of conflicts that, in fact, virtually every member of this panel and virtually every member of this panel failed to honor their disclosure obligations. They all signed the following oath when they began this case. This is the standard ICC disclosure form that every one of them signed. They promised to disclose, quote, any past or present relationship, direct or indirect, between you and any other parties, their related entities, or their lawyers or representatives, whether financial, professional, or of any other kind. ICC Rule 11 requires them to disclose, quote, any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties or give rise to reasonable doubts as to the arbitrator's partiality. Here, we have multiple undisclosed conflicts between the lawyers on their side and the arbitrators in this case that plainly needed to be disclosed and that weren't disclosed. And remember, when it comes to arbitration, this is a consent-based proceeding. There are very few reasons to overturn an arbitral award because it is a consent-based proceeding. But one of the very few, because it goes to the fundamental integrity of the proceeding itself, is when an arbitrator withholds information that could reasonably give rise to a potential conflict. And respectfully, that is precisely what we have here in spades. And if there are further questions, I just leave you with one. You can help me with this to make sure I have the standards. So, let's assume there are some undisclosed conflicts. All right. So, it would have certainly been better if they disclosed all of these things that you point to. So, tell me then the second step that the court has to find that says University Commons, what is the second step? Sure, Your Honor. And I can quote directly from University Commons, which addresses the standard directly. If the undisclosed information could, quote, would, quote, lead a reasonable person to believe that a potential conflict exists, and that is implementing the Supreme Court standard in the Commonwealth Codings case, which adopts, and here I'm quoting, a simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias. So, it is not an actual bias standard here, and it makes sense. Because, remember, these disclosures are meant to kick off a consent-based arbitration where the parties get full information and decide whether or not to go forward. And the failure to disclose… In University Commons, did they reverse a vacatur there? Was there a vacatur? Can you give me a case where there was a vacatur? Are your best cases where you have a situation where there was something they failed to disclose and the court found that standard was met? Because you want me to read three cases. Tell me why. I want you to read three cases. It's going to be Commonwealth Codings, University Commons, and Middlesex. And to sort of unpack your question, Your Honor, University Codings was a vacatur case. They remanded for vacatur. But what the court made clear was that if there was undisclosed information that the arbitrators knew of, and that would, in the eyes of a reasonable person, give rise to a potential conflict, that was a basis for vacatur. It just was unclear whether those facts were established on that case. Here, we know what the undisclosed relation… So there wasn't an actual vacatur there. There was just saying… Vacatur and remand, I mean, Your Honor. Vacatur and remand for further… For the other two vacaturs? Middlesex was a vacatur case. Commonwealth Codings was a vacatur case. And at Middlesex, I would point you to this court's language that says that the… And here I'm quoting, the Commonwealth Codings holding has been interpreted as somewhat analogous to a per se rule or irrebuttable presumption requiring the award to be set aside once it is established that the arbitrator actually knew of, yet failed to disclose potentially prejudicial facts, which could impair… I'm going to ask your fellow colleagues the same question. But can you help me with the facts here? I understand the three main areas of disclosure that you've… They contend they didn't disclose. Does anybody dispute the underlying facts? I know they dispute about what was required to be disclosed, but does anybody dispute the underlying facts of this person was hired? Certainly, certainly not. Were any of those facts in dispute or basically your position is they're all undisputed? To my knowledge, Your Honor, they are undisputed. It is undisputed that one of the arbitrators, Mr. Von Wobiser, served alongside of one of their lead lawyers, Mr. Hines. I understand what the various disclosures are. I'm just trying to make sure nobody disputes the timing and the overlap on the one disclosure issue. So those facts aren't disputed. Not to my knowledge, Your Honor. My friend on the other side can say if he disagrees, but this case has always been litigated on those undisputed facts. Another question. Does anybody dispute that those rules you just read that tell you what you have to disclose? Does anybody dispute that these matters come within those rules? Well, certainly, I think that my friends on the other side think that at least some of those matters don't come within those rules. I think all of these plainly come within those rules. And I would, in particular, point you to the ICC standard disclosure form that I quoted, which requires disclosure of any past or present relationship, direct or indirect, between you and any of the parties, their related entities, or their lawyers. That plainly encompasses a situation where two of their lawyers are serving. That's kind of a catch-all. Well, Your Honor, that is what they sign at the very front end. And that's what triggers their authority over this arbitration when they sign that and promise to disclose that. And I would also point you to the ICC decision in this case, which we think got a lot of things wrong. But the one thing that it got right was it said that that co-arbitrator relationship should be disclosed. As to the cross-appointment of Mr. Gunter by their wing arbitrator, the four-time wing arbitrator, to the lucrative appointment, the ICC decision essentially punts on the issue on whether or not it should be disclosed in the first place. But I think it's quite clear that under these broad disclosure requirements, if your four-time wing arbitrator is in fact awarding the arbitral president a lucrative contract right smack in the middle of the case. Your position is all of these should have been disclosed under the rules themselves in the form. Your Honor, yes. But our more fundamental position is that regardless of what those rules are, the Federal Arbitration Act itself adopts the evident partiality standard. That's what applies in this court. And University Commons makes quite clear that these are the types of relationships that needed to be disclosed as does Commonwealth Codings. Again, one of the very reasons why this is one of the few bases for overturning an arbitral decision. It proprised an important U.S. domestic law check on international arbitrations. There are very few checks on international arbitration, but the evident partiality standard that Congress embodied in the Federal Arbitration Act as a check by United States courts on arbitral proceedings is one of the few because it goes to the fundamental integrity of that type of consent-based arbitration. Thank you. Okay. We have your cake. Well, Mr. Francesca, you say three minutes for rebuttal. Thank you, Your Honor. Mr. Mullins. May it please the Court, Ed Mullins from the Panama Canal Authority. The issue before this court is whether or not the district court got inclined, erred, and declined to vacate its international arbitration award. An allegation is evident partiality. It's not an issue simply of whether or not disclosure should be made. Are we going to vacate this award? And if I could just make four brief points at the beginning to set the stage on the proper standard. First, vacature is one among the narrowest known to law. There's a strong policy to preserve arbitration awards. That's got to be balanced. It's a disclosure policy. Here, based only on speculation, the district court held, assuming, their speculation assumed the very worst of three world-renowned arbitrators, and they would have you vacate today after district court denied it, the ICC court did not remove these arbitrators. Well-reasoned, 600-page, $238 million awards. Arbitration took six years, 78 fact witnesses, 63 expert witnesses, 20 days of hearings. And let's talk about the evident partiality standard. The Court want to know what is the guiding legal principle. The parties agree. This test is very clear and been very clear to this court throughout this jurisprudence. Quote, the arbitrator knows of, but fails to disclose information will lead a reasonable person to believe that a potential conflict exists. To satisfy that standard, evident partiality has to be to a party. It's not just free-floating. They have to show that it's actually prejudiced in favor of a party. It's an objective standard. Case-by-case analysis is very important here because some of the exact same alleged conflicts they allege appear on their side. They were appearing before these arbitrators sometimes simultaneously. The exact same things were complained about were happening here. And finally, the proof, direct, definite, capable demonstration, not remote, uncertain, speculative. Now, applying these principles, the trial court looked at three categories of nondisclosed facts, not conflicts. That's a legal conclusion. What facts were not disclosed? And both the ICC Court and Magistrate Court held none of these evidence evident partiality, all related simply to professional interactions that are non-directly related to a party and all are common. How do we know it's common? Because we've seen it on both sides. And the point is, had they been disclosed, they would have made the same point to the ICC Court and say, hey, we want to remove this arbitrator. The point is, the ICC looked at all of this and said, yeah, you know what? We might want to, you should maybe disclose these, but that's not the point. They were not going to remove the arbitrator. And I point the court to the life care case where the court said, you know what? You probably should have disclosed on the AAA rules, but we're not going to vacate the ward. You'll have to agree. Some of these items should have been disclosed here probably under the rules. As the ICC Court said, they said the arbitrators, the way the ICC rules go. I didn't ask you about what the ICC said. I asked you, do you agree that some of these items, I mean, I think one of them is kind of beside the point, but a couple of the items definitely they should have disclosed. Under the rules. Under the rules. And put aside New York Convention defenses. Under the rules. Your Honor, the answer to the question is, and I'm sorry, I have to go back to you. It goes to the, our position is that no, because they're simply common interactions. The ICC Court said, you know what? We probably should have disclosed them. So that I'm clear on this. And I want to focus on the first relationship. Gadskill's appointment of Gunther to be tribunal president in another ICC arbitration during the course of this arbitration proceeding. Were you obligated to disclose that on the front end? Your Honor, again, the ICC, our position is that the arbitrators are not, they're not disclosing. The ICC said they should disclose them. But again, that's not the point. Well, I will concede that the ICC was correct that some of this should be disclosed just for. I'm talking about this one in particular, this first relationship that he highlights. Gadskill's appointment of Gunther to be tribunal president in another ICC arbitration during the pendency of this one. That ought that to have been disclosed. Was it error not to have disclosed that? No, Your Honor, because again, it's very common for arbitrators to sit together in arbitration. And at the end of the day, it's not an issue, again, it's not an issue whether or not. The question is not whether it's common. We're asking whether under the rules it should have been disclosed. In the middle of this arbitration, he appoints Gunther to serve as a tribunal president. We understand it's an unrelated arbitration. That seems highly significant to me. That's a lot of money to be appointed as the tribunal president in another international arbitration, right? That's hundreds of thousands of dollars, correct? It is, Your Honor. Right. And you're saying that shouldn't have been disclosed. The case is ongoing. They're serving together. He goes and points somebody for this other very lucrative matter. Are you really telling us that shouldn't have been disclosed? Under the rules. And you say, well, maybe I'm right here doing this. I don't know that I should go take this other case under all these situations. You're saying that shouldn't be disclosed? Your Honor, again. Is it a yes or no? It's okay if you say no, but. Your Honor, it's just what I'm trying to express is the question is, in all these cases of non-disclosures, our position in that particular one, that no, we don't think it was something that was so... Okay, so let's jump to really the heart of this then. Right. Assume, arguendo, for the purpose of the question, that there was an obligation to disclose Gaitskill's appointment of Gunther to be tribunal president in another arbitration proceeding at the same time that involved a lot of money in terms of the cost to actually undertake the arbitration. Help me with whether or not that would lead a reasonable person to believe that a potential conflict exists. Sure, Your Honor. And that's the key question. Let's assume for purposes of argument that all of this should have been disclosed. Again, does it meet the test? I want you to focus on this one rather than the second and third conflicts because they're not as powerful as this one. They involve co-arbitrators with members of ACP's council in unrelated arbitrations before the Panama 1 arbitration even began. But I want you to help me with this one.  And the answer is, Your Honor, the reason why this fails is because the test is evident partiality to a party. So the linchpin of this position is their assumption is Mr. Gaitskill is going to vote our way because we appointed him. That is completely inconsistent with the ICC policy and the norms of international arbitration that arbitrators are independent. That's a speculation that the trial court said he refused to jump on an unfounded trial train speculation that just because this appointed arbitrator helped or was a part of a decision with another arbitrator, an unrelated arbitration, to have another this arbitrator appointed as chair means the door going to be a voting, if you will, on behalf of Gaitskill who we appointed because that is the speculation that that assumes the worst of all three of these arbitrators, which is they're assuming that they're violating their independence. At the same time, they've appointed Mr. Gaitskill. Why is it all of a sudden he's voting our favor in this arbitration if in another arbitration they've also appointed him? That's why all this doesn't make any sense. And they talk about how a party to honor the older cases. Remember, the international norm is a party appointed arbitrator, a procedure that they agreed to under the ICC rules. Each arbitrator is independent. That is the policy. That is the procedure. You cannot assume that simply because Mr. Gaitskill basically was part of a vote to make Mr. Gunther a chair of another arbitration completely unrelated means that they're going to vote in favor of Mr. Gaitskill. And the trial court said we're not obliged to be neutral. All right. Where they're obliged to be neutral. They're obliged to be neutral. And here's where it goes to speculation. They just omitted all the disputed. Right. Unlike the University Commons case, answer to Judge Hall's question, all that happened there was they vacated an order refusing to vacate. The court reversed the order refusing to vacate. When they went back down again, they confirmed the award. And here, but the difference is here, we know that the reason it's undisputed why Mr. Gunther was appointed because he said. My understanding, I was appointed because I'm an expert and they wanted my expertise. There's absolutely no evidence to the contrary. There's nothing in this record that remotely suggests that these arbitrators are biased. And I go back, Your Honors, again, we can sit here and second guess. You can ask me, should they disclose this one? Should they disclose that one? That's not the point. They would be here doing the exact same thing. Had we had disclosed them, they would have jumped to the ICC and said, hey, you know, these guys were doing this at the same time. The fact that non-disclosure doesn't show evident partiality. The fact that the rules may not have been followed under life care doesn't show evident partiality or held that. The issue is, would a reasonable person without speculation possibly believe that there's evident partiality here? The answer is no. You ask Judge Hall, what three cases? Commonwealth. The arbitrator had a business relationship with one of the parties. University Commons. Specifically held they were not going to require vacature in that case. And by the way, the only thing they asked for in University Commons was the opportunity to take discovery. They waived that here. The first time you see that in their brief is in the reply in a footnote. And the court is well aware you can't raise that for the first time. So the very case they say is controlling for them doesn't help them anyway. Even if you think the relationship in University Commons is analogous, we do not believe it's analogous because the situation there is that we're acting as co-counsel on behalf of two parties and they had a litigation and they basically had a duty to represent a client and they had an agenda. Arbitrators, whether they're counsel or arbitrators themselves, have no such agenda. There's a duty of oath. We can't sit here today and speculate that these people did not do that because I will tell your honor what they're asking you to do here is attack the very practice of international arbitration system under the ICC system. It seems to me by necessity there's going to be some speculation under the standard because it's not an actual prejudice. So it's rather a reasonable person would think there's a tendency to favor one party or the other. It seems like there's always going to be some speculation in the standard. But here we actually have the evidence as well. It's undisputed record. We actually heard from the actual arbitrators. Why would you pick? I was picked as my expertise. Remember also there was a third arbitrator that was in the decision to pick. But here if you're worried about the first one, it's not just speculation. You're assuming he violated his oath and they didn't pursue this. They actually asked questions of the ICC. The ICC found that none of these. Yes, they said a couple of them you probably should have disclosed. But then they said we're not removing any of you. Right. And then they come here and now after all this comes in, they want to now say with absolutely no evidence whatsoever attacking the integrity of these arbitrators and say, you violate your oath. And then going back to my point with Judge Marcus, it assumes that he's somehow Mr. Gates still is somehow voting for us just simply because we appointed him. That undermines the entire system of ICC arbitration appointment, which they agreed to. They both we both agree. We're both going to pick arbitrators. So you can't just assume under the normal situation in international arbitrations or ICC rules, they take an oath to be independent, just as all three of you do. They don't pick Mr. Gatsby because you're going to vote in my favor. They pick Mr. Gatsby. Well, a lot of people think you're going to vote in favor of the president that appointed you. You know, that's kind of. Unfortunately, your honor, but the world's changed and I'm going to play arbitrate, under the old rules, even back in university common days, on the triple A rules, there was an idea that you're sort of an advocate. So that's why, but they changed all that until under the current triple A rules, which are not here. They now the training is you're independent, which is adopting the international model. That's always been the international model. It's you're not there to vote their side. That is critical for the court to understand that has been the norm and international arbitration from the beginning. So even the, even the domestic rules have followed into that, that model, but it's critical to this court to understand that. Help me to understand your argument here. And I'm talking about the first relationship. Your argument is that the mere appointment standing alone is not enough. Even though the appointment yielded a large fee to the arbitrator, what else would there have to be in your view to ever be enough to create this impression in the mind of a reasonable person to believe that a potential conflict exists? Your honor, you would have to have your appointment ain't enough. What would be enough for you? Correct. There would have to be some evidence like what, you know, we, we, you know what, if I, if you help me get this appointment, I will, you know, do something for you. And that would, that would not even just be evident partiality. That's easy. Right. And I, and I understand your honor, but I will tell you no court. This will be the first court that even suggests that this would be a situation that would show evident partiality. The, uh, the Scandinavian case that they cite cold services arbitrators has never been found to constitute evident partiality. It's not like there's no, simply no evidence at all that Mr. Gunter was hurting for work. Remember there was another arbitrator involved as well. Is he part of the conspiracy? There's simply no evidence here. It doesn't meet the prima facie standard because it all is based on speculation and they have simply not asked for that. They haven't asked, they didn't ask an appeal properly that there should be anything beyond this. And so you have to understand if we take the position that every time arbitrators sit together and there may be some situation where they voted for them to be a chair and some of our arbitration, you're now going to be attacking, not just this arbitration award, but awards that may be pending all over the world. I go back to the facts here. Three of these were in the midst of this arbitration, right? I mean that things occurred during the midst of this arbitration. And two of them were that the lawyers for ACP then were serving as co-arbitrators with somebody on this panel, right? In one, your honor, Mr. Yana was serving as a co-arbitrator in unrelated arbitration. Yeah, I understand they're all unrelated, but three of these four disclosure items all occurred during the middle of this arbitration, right? I'm just trying to follow this and what the appearance of impartiality could be. And so you've got two lawyers for ACP then end up on arbitration panels at the same time with the arbitrators who are in this case. Is that right? Again, your honor, in one situation that was co-service, in another situation it was an appearance before the arbitrator, which Mr. McMullen. I'm confused. Okay, sure. Let me break it down. Let me just put the question to you this way. It'll help me if you just give me a direct answer or a simple question. The first relationship, Gaetzke's appointment of Gunther to be tribunal president in another ICC arbitration occurred during the course of this arbitration, right or wrong? Is that correct? That's correct, your honor. The second and third alleged conflicts involve von Webster and Gaetzke serving as co-arbitrators with members of ACP's counsel, Gianna and Loftus, respectively in unrelated arbitrations that occurred before Panama 1 arbitration even began. Is that correct or is that incorrect? That is correct. Mr. Loftus was before, correct? One was before, one was in the middle. Which one? That was where I was headed, your honor. Which one was in the middle, Loftus? No, the von Webster, your honor. Okay, von Webster was in the course. The other one was not. Right. The fourth one was Gaetzke, who since 2016 had been serving as an arbitrator in an unrelated case where ACP's counsel represented a party. That's the fourth one, right? That's correct, your honor. That's Mr. McMullen. He was appearing before Mr. Gaetzke. Okay, so the time frames overlap. They're not coextensive, but they overlap and continue during the course of this arbitration. Is that right or wrong? That is correct, your honor. Okay, so to get back to Judge Hall's question, of the four, three involve conduct during the course of this arbitration proceeding and one precedes it. That's correct, your honor. Okay. And what I was trying to express is we see that on their side as well, right? What you see is during the arbitration, Mr. von Webster, for example, they were currently appearing for Mr. von Webster during the arbitration. In addition to Mr. Gaetzke, they also were appearing before Mr. Gaetzke during the arbitration. None of this was disclosed. I'm just trying to make sure I understand this. By analogy, it would kind of be like you and I are right here in this posture, but over here in this other unrelated arbitration, we're serving as arbitrators together, right? That in the one situation, that's what happened. Yeah, right here. I'm a judge. I've got two colleagues. You're arguing. That's one of them. So, the unrelated, you and I are the judges, right? We're the arbitrators. Correct. Okay. I'm trying to think whether I would be ruling off your case if I was sitting over here. And I'm just curious how much that happens. This just may be a feature of international arbitration. I did arbitration as a lawyer. I got all this. It happens. I understand everybody, you appoint people you know. I've never appointed an arbitrator to a client unless I knew who the lawyer was and had some relation. Your Honor, you've hit the nail on the head. It happens all the time. For example. Well, I don't know that it happens all the time, but then the lawyer concurrently, this is concurrent, and it happens in the middle that I then appoint you to be an arbitrator over here. Well, but that didn't happen here. Now, that particular scenario, it wasn't that counsel appeared before an arbitrator is appointed. The appointment is only to arbitrator city. There's not a situation where the counsel was appointed as an arbitrator at the time. I understand, but it's still. Okay. You've answered my questions. You've run over.  Your Honor, just if I could wrap up. 30 seconds. 30 seconds. You ask counsel for their main cases. We would ask you to look at your decisions in life care, Scott, G and L, even University Commons and the Second Circuit's decision, Andros and Scandinavian. Okay. And Your Honor, we ask you to firm. No court has ever in the history of decisions ever remotely suggested any of the suggests at a trial. I want you to try my patience. Um, Mr Francisco, you say three minutes. Thank you, Your Honor. I have four points to make. The first is that my friend says this happens all the time and tries to point to this case. He has not identified any other instance in which either our wing arbitrator appointed one of the other arbitrators to another panel during this case, awarding that lucrative contract right in the middle of this case. He has not identified a single instance where our lawyers were serving alongside of the arbitrators on a different panel during this case. Indeed, we are aware of only one such instance where one of our lawyers was serving alongside of Mr Geisler and Mr Geisler disclosed that immediately. Let me ask you this question, Mr Francisco, why should it be enough to say a reasonable person would have the impression of a potential conflict simply because of the appointment of Gunter to be the tribunal president when there was an appointment in another in another case? Because when there is evidence in the record, concrete evidence that he was appointed because he had a particular expertise in this particular area involving contracts, etc. Why should it be enough simply to say there was an appointment in another case? Because yield this conclusion. I ask you the question candidly because if the answer is yes, the consequences are enormous. It seems to me the international arbitration. I totally understand the question. Two responses, Your Honor. First of all, you agree the consequences would be. Your Honor, frankly, I don't. What I would point you to is the Supreme Court's quote that says this is a commonwealth coatings. We can perceive of no way in which the effectiveness of the arbitral process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias. But I'll put that entirely to the side here. You don't just have a cross appointment. You have Mr Gates school who was not just appointed by them once, but in all four of the Panama related arbitral proceedings. He was their guy that they appointed in case after case, after case, after case, and to have their guy awarding the arbitral president a lucrative contract. I don't know how much that contract was worth. I know that in our case, I think we paid the arbitral president something on the order of two million dollars. So we're talking about a massive contract that was awarded by their four time wing arbitrator. I think it was two months before they heard closing arguments in that case. All we're saying, not that that can't happen. We're saying that that needs to be disclosed and that the failure to disclose that information is precisely what gives rise to evident partiality. Two more points, Your Honor. One is that if you affirm here, none of this information is ever going to be disclosed. So Judge Marcus, to the extent you're worried about the consequences for international arbitration. I'm not worried. I'm just trying to find out. I totally understand. I would just say that that is an enormous consequence to going against us. This is never going to be disclosed. And my final point is that this is all about consent. They can have whatever types of cozy relationships they want with each other, but they need to tell us about it so that we can meaningfully decide whether that's a process we want to be part of. That's what we are deprived of. And that's why it's one of the few bases for overturning awards in this area. Thank you, Mr. Francisco. We have your case. We'll be in recess till tomorrow.